# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

|  |  |  |
|---|---|---|
| JODIE LOUISE BYRNE, | ) | |
| *Plaintiff* | ) | |
| v. | ) | No. 1:20-cv-00036-GZS |
| STATE OF MARYLAND, et al., | ) | |
| *Defendants* | ) | |

### ORDER GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS AND RECOMMENDED DISMISSAL OF THE CASE

Plaintiff Jodie Louise Byrne sues the State of Maryland, Harford County, Maryland ("Harford County"), and her former husband Anthony Michael Deyesu in connection with alleged harms inflicted on her by Deyesu that the State of Maryland and Harford County failed to prevent or redress as well as harms allegedly directly inflicted on her by Harford County. *See* Complaint for Civil Case ("Complaint") (ECF No. 1) at 1-4, 7-17.[1] I grant the plaintiff's request for leave to proceed *in forma pauperis*, *see* Application to Proceed in District Without Prepaying Fees or Cost ("Application") (ECF No. 3), but recommend that the court dismiss her complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) unless, within the time to file an objection to this recommended decision, she files an amended complaint in which she asserts an actionable claim.

---

[1] The plaintiff's 23-page complaint references other individuals besides Deyesu, including, *inter alia*, psychologist Pam Bear, *see* Complaint at 11, social worker Michelle Sayer, *see id.*, and "State Attorney, Joe Casilly[,]" *id.* at 9. However, the plaintiff has not named any of these individuals as defendants in this action, warranting dismissal of any purported claims against them. *See, e.g.*, *Azubuko v. Dedham Mass. Police Comm'r*, Civil No. 06-152-B-W, 2006 WL 3841506, at *1 n.2 (D. Me. Dec. 28, 2006) (dismissing a complaint against "the insurer" because the plaintiffs had "not named the insurer as a defendant in th[e] action").

1

## I. Application to Proceed *in Forma Pauperis*

*In forma pauperis* status is available under 28 U.S.C. § 1915(a)(1). In her motion to proceed *in forma pauperis*, the plaintiff declares under penalty of perjury that (i) her gross income is $0 per month, (ii) she has received an unspecified amount of income in the last 12 months from disability or worker's compensation payments and gifts or inheritances, (iii) she has $400 in a checking or savings account and a sole asset of a 2020 Jeep Wrangler, and (iv) she has $2,800 in regular monthly expenses and $112,000 in debt or financial obligations. Application at 1-2. These financial circumstances entitle her to proceed *in forma pauperis*.

## II. Section 1915(e)(2)(B) Review

### A. Applicable Legal Standard

The federal *in forma pauperis* statute, 28 U.S.C. § 1915, is designed to ensure meaningful access to the federal courts for those persons unable to pay the costs of bringing an action. When a party is proceeding *in forma pauperis*, however, "the court shall dismiss the case at any time if the court determines[,]" *inter alia*, that the action is "frivolous or malicious" or "fails to state a claim on which relief may be granted" or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

"Dismissals [under § 1915] are often made *sua sponte* prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering such complaints." *Neitzke v. Williams*, 490 U.S. 319, 324 (1989); *see also Mallard v. U.S. Dist. Court for S. Dist. of Iowa*, 490 U.S. 296, 307-08 (1989) ("Section 1915(d), for example, authorizes courts to dismiss a 'frivolous or malicious' action, but there is little doubt they would have power to do so even in the absence of this statutory provision.").[2]

---

[2] Section 1915(d) was subsequently renumbered to section 1915(e).

When considering whether a complaint states a claim for which relief may be granted, a court must assume the truth of all well-plead facts and give the plaintiff the benefit of all reasonable inferences therefrom. *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). A complaint fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

Although a *pro se* plaintiff's complaint is subject to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), this is "not to say that pro se plaintiffs are not required to plead basic facts sufficient to state a claim[,]" *Ferranti v. Moran*, 618 F.2d 888, 890 (1st Cir. 1980). To allege a civil action in federal court, it is not enough for a plaintiff merely to allege that a defendant acted unlawfully; a plaintiff must affirmatively allege facts that identify the manner in which the defendant subjected the plaintiff to a harm for which the law affords a remedy. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As noted, the statute that provides for waiver of the filing fee also requires the court to determine whether the plaintiff's case may proceed. In other words, the plaintiff's complaint must be dismissed if the court finds it to be frivolous or malicious, seeks monetary relief from a defendant who is immune from such relief, or fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B). In this regard, a *pro se* plaintiff's complaint must be read liberally. *Donovan v. Maine*, 276 F.3d 87, 94 (1st Cir. 2002).

### B. Factual Background and Statement of Claims

So read, the key facts and claims asserted in the plaintiff's complaint can be summarized as follows.

The plaintiff, a resident of Maine, and defendant Deyesu, a resident of Maryland, were married in December 1988 and had two children in January 1997 and August 2001. Complaint at 3-4. During their marriage, the plaintiff stayed at home with the children in the familial home while Deyesu earned a salary. *Id*. at 4. Deyesu purportedly was convicted of assaulting two different women – the plaintiff in January 2008 and "a female employee" in 1987 or 1988 – and allegedly admitted that he attempted to murder the plaintiff. *Id*. at 4, 10, 12, 17, 21. Deyesu "legally kidnapped and alienated" the two children from the plaintiff in 2008, and the children now "tell people their mother is dead and or crazy[.]" *Id*. at 15, 17. The plaintiff and Deyesu were divorced in January 2010. *Id*. at 4. Deyesu failed to pay alimony and left the plaintiff "homeless, childless and penniless[.]" *Id*. at 17.

The Harford County Police Department "on several occasion[s] arrested the Plaintiff on false charges and physically assaulted" her. *Id*. at 12. "While in the care of Harford County the Plaintiff was assaulted by medical staff at the poverty-stricken mental health hospital and drugged[.]" *Id*. at 16. "Harford [C]ounty held the plaintiff for 3 days and failed to render medical assistan[ce] after the numerous officers tossed [her] against the wall and attacked [her] and blocked any phone call to an Attorney or her parents[,]" and "denied a phone call for 3 days after her arrest on false nonviolent offenses[.]" *Id*. at 13.

The State of Maryland found Deyesu guilty in 1987 of assaulting a female employee but merely ordered him to engage in community service because he was an "affluent white male" whose wealthy uncle had connections with judges and the state's attorneys. *Id*. at 7-8. Deyesu manipulated and influenced government officials, and the State of Maryland and Harford County allowed and/or participated in these actions. *Id*. at 7-9, 12, 15, 20.

The State of Maryland has failed to "hold abusers accountable for assaulting women[,]" "provide Attorneys for women, safe proper housing, food and economic support to battered mother[,]" *id*. at 8, "hold Judges and State prosecutors accountable for failing to uphold constitutional rights[,]" *id*. at 9, or "properly prosecute Mr. Deyesu when he admitted to attempted murder of the plaintiff[,]" *id*., as has Harford County, *id*. at 10-11, 15.

The plaintiff describes the relief sought against the named defendants as "$1,000,000 . . . per year per child . . . since March 12, 2008[,] . . . [t]o be paid by the State of Maryland and Harford County, in the amount of two million per year of separation per defendant as a result of the alienated adult children[,]" "punitive damages caused by the three named defendants[,]" and "permanent support from the Defendant[]s for the rest of her life which would include medical treatment, housing, and wellness care in the form of $30,000.00 per month[.]" *Id*. at 5.[3] The plaintiff states that "[a] strong monetary award in favor of a battered mom against a State government and a County government appears to be the *only* means to have this situation enlightened." *Id*. at 20 (emphasis added).

## C. Discussion

### 1. The State of Maryland

With respect to the State of Maryland, the plaintiff's complaint fails to state a claim as to which the requested relief, "restitution and other punitive damages" in the amount of more than $2 million annually, can be granted. Complaint at 5-6, 20. With certain exceptions not relevant here, a state is immune from suit for damages. *See, e.g., Davidson v. Howe*, 749 F.3d 21, 27 (1st Cir. 2014) ("[A] suit by private parties seeking to impose a liability which must be paid from public

---

[3] The plaintiff also seeks relief in the form of "support for her adult children" on the basis that they should be "included with the plaintiff for the severe constitutional and human rights violations" that she alleges. Complaint at 5. However, because "*pro se* plaintiffs may not represent others[,]" *Martinez v. Caesar*, No. 2:19-cv-00228-JAW, 2019 WL 3573664, at *3 (D. Me. Aug. 6, 2019) (rec. dec., *aff'd* Sept. 6, 2019), this relief cannot be granted.

5

funds in the state treasury is barred by the Eleventh Amendment" regardless of "whether the named defendant is the state itself or . . . a state official in [his or] her official capacity." (citation and internal quotation marks omitted)).

In other words, the Eleventh Amendment "bars suit for money damages in federal court against a state, its agencies, and state officials acting in their official capacities[,]" *Wiley v. Vea*, Civil No. 19-00195 JMS-WRP, 2019 WL 3225703, at *7 (D. Haw. July 17, 2019) (citations and internal quotation marks omitted), the very relief that the plaintiff seeks from the State of Maryland.[4]

### 2. Harford County, Maryland

Counties, "unlike States, do not enjoy a constitutionally protected immunity from suit[.]" *N. Ins. Co. of N.Y. v. Chatham Cty., Ga.*, 547 U.S. 189, 193 (2006) (citation and internal quotation marks omitted). Nonetheless, the plaintiff's complaint fails to state a claim against Harford County because it either implicates prosecutorial or judicial functions that are immune from suit, constitutes an impermissible attempt to appeal final state court rulings, or is too disjointed, vague, and conclusory to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570.

The plaintiff, for instance, alleges that "Judge Eaves" of the Harford County District Court and later the Harford County Superior Court ruled against her and/or in favor of Deyesu as a result of bias and fraternization with her ex-husband's uncle, *see* Complaint at 10-11, and that unnamed "County Judges" blocked her appeal, *id*. at 16. However, "judges performing judicial acts within their jurisdictions are entitled to absolute immunity from civil liability." *Doyle v. Warren*, No.

---

[4] This is true, as well, of allegations against the State of Maryland employees contained within the section of the complaint pertaining to Harford County. *See* Complaint at 11, 16.

2:17-cv-00013-NT, 2017 WL 3448845, at *3 (D. Me. Aug. 11, 2017) (rec. dec., *aff'd* Sept. 13, 2017).

"[J]udicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." *Mireles v. Waco,* 502 U.S. 9, 11 (1991). Rather, such immunity can only be overcome in two instances. "First, a judge is not immune from liability for nonjudicial actions, *i.e.,* actions not taken in the judge's judicial capacity." *Id*. (citations omitted). "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* at 12 (citations omitted). No such showing is made here.

The complaint also fairly can be read to allege failings in prosecuting Deyesu, asserting that "Harford County failed to hold Mr. Deyesu accountable for Attempted Murder of the Plaintiff after he admitted this serious crime[.]" Complaint at 11. However, prosecutors also "enjoy[] absolute immunity from suit when acting within [the] scope of official duty[,]" *Gordon v. Maine,* No. 08-100-B-S, 2008 WL 2433196, at *2 (D. Me. June 13, 2008) (rec. dec., *aff'd* July 10, 2008), and "the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation[,]" *Oyler v. Boles*, 368 U.S. 448, 456 (1962).

Indeed, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion[,]" *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) (footnote omitted), subject to "constitutional constraints" against "selective enforcement based upon an unjustifiable standard such as race, religion, or other arbitrary classification[,]" *United States v. Batchelder*, 442 U.S. 114, 125 & n.9 (1979) (citation and internal

7

quotation marks omitted). The plaintiff alleges no facts suggesting that this was the case with respect to the prosecution of Deyesu.

Finally, to the extent that the complaint, in challenging the actions of either the State of Maryland or Harford County, constitutes an appeal from any final state court judgment – whether it be the divorce judgment, custody case involving minor children, or criminal convictions, *see*, *e.g.*, Complaint at 10, 17, 19 – this court has no jurisdiction to review the final judgments and decisions of state courts, *see*, *e.g.*, *Lance v. Dennis*, 546 U.S. 459, 460 (2006) (per curiam) ("The *Rooker-Feldman* doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the [federal] district court proceedings commenced.'") (citation omitted). "The plaintiff's recourse is to file an appeal in state court." *Todd v. Maine*, No. 1:18-cv-00302-GZS, 2019 WL 259436, at *3 (D. Me. Jan. 18, 2019) (rec. dec. *aff'd* Feb. 4, 2019), *appeal dismissed*, No. 19-1480 (1st Cir. June 11, 2019), *appeal dismissed*, No. 19-1442 (1st Cir. July 31, 2019), and *appeal docketed*, No. 19-2123 (1st Cir. Nov. 8, 2019).

The plaintiff's remaining allegations against Harford County are too disjointed, vague, and conclusory to permit either the court or the defendant to understand the alleged wrongs committed against her, lacking some or all of the crucial detail of who, what, when, where, and how. These include allegations concerning false arrest and physical assault by the Harford County police, slander by Harford County employees, denial of the plaintiff's right to call an attorney or her parents, a public strip-search, and an assault by medical staff while in the care of Harford County mental health hospital. *See* Complaint at 12-14, 16. These allegations do not provide "enough detail to provide [Harford County] with fair notice of what the . . . claim is and the grounds upon which it rests." *Ocasio-Hernández*, 640 F.3d at 12 (citation and internal quotation marks omitted).

### 3. Anthony Michael Deyesu

While the plaintiff's complaint, again, is not clear as to the nature of her claims against Deyesu, it can be read liberally to allege that he violated her constitutional rights, *see* Complaint at 19, improperly influenced the State of Maryland and Harford County to evade punishment for assaulting her and/or to obtain custody of the couple's children while he and the plaintiff were residing in Maryland, *see id.* at 4, 9, 12, 15, failed to make alimony payments, *see id.* at 17, and committed civil torts of assault, libel and/or slander, *see* Civil Cover Sheet (ECF No. 5); Complaint at 9, 15, 20.

The plaintiff alleges no facts establishing that this court has personal jurisdiction over Deyesu.[5] However, even assuming that she did, her complaint nevertheless fails to state a claim upon which relief can be granted. First, to the extent that she alleges that Deyesu violated her constitutional rights, she makes no showing that he acted under color of state law, as required to state a claim pursuant to 42 U.S.C. § 1983. *See, e.g.*, *Anderson v. Dep't of Health & Human Servs.*, No. 1:16-cv-00624-JDL, 2016 WL 7494853, at *2 & n.2 (D. Me. Dec. 30, 2016) (rec. dec., *aff'd* Feb. 6, 2017); *Parham v. Pelletier*, No. 2:11-cv-435-DBH, 2012 WL 987336, at *3 (D. Me. Mar. 21, 2012) (rec. dec., *aff'd* Apr. 13, 2012).

Second, as discussed above, to the extent that her allegations that Deyesu improperly manipulated court proceedings constitute an appeal from any final state court judgment – whether

---

[5] "The first step to achieving personal jurisdiction is that a claim must arise out of, or be related to, the defendant's in-forum activities." *Hannon v. Beard*, 524 F.3d 275, 282 (1st Cir. 2008) (citation and internal quotation marks omitted); *see also, e.g.*, *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 135 (1st Cir. 2006) ("[A] defendant must have sufficient minimum contacts with the forum state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." (citation and internal quotation marks omitted)). The complaint is devoid of any factual allegations from which the court could conclude that Deyesu had any contacts with Maine, independently warranting the dismissal of the complaint as to him. *See, e.g.*, *Griffin v. Stephney*, 1:16-cv-00393-JAW, 2016 WL 4273181, at *2 (D. Me. Aug. 12, 2016) (rec. dec., *aff'd* Aug. 29, 2016) (dismissing complaint following review pursuant to 28 U.S.C. § 1915 when no party was a Maine resident, the incidents about which the plaintiff complained did not occur in Maine, and the record lacked any evidence to suggest that the plaintiff was unable to prosecute his action in Virginia).

the divorce judgment, a custody case involving minor children, or criminal convictions, this court has no jurisdiction to review the final judgments and decisions of state courts, *see*, *e.g.*, *Lance*, 546 U.S. at 460; *Todd*, 2019 WL 259436, at *3.

In any event, the plaintiff's allegations against Deyesu are too vague and conclusory to state a claim. Even under a broad reading of the complaint, the plaintiff mainly offers "labels and conclusions[,]" failing to "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted).

### III. Conclusion

For the foregoing reasons, I recommend that the court grant the plaintiff's application to proceed *in forma pauperis* but recommend that it dismiss her complaint unless, within the time to file an objection to this recommended decision, she files an amended complaint in which she asserts an actionable claim.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 20th day of March, 2020.

/s/ John H. Rich III  
John H. Rich III  
United States Magistrate Judge